UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **EDGAR T. NUMRICH,** | ) | Case No. **3:12-cv-01593-SI** |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| **LAURIE A WARNER**, Director, | ) | |
| **WILLIAM T. FINK**, Deputy Director, and | ) | |
| **KEVIN MCCARRON**, Manager | ) | |
| Collections Unit, in their personal and | ) | |
| official capacities as employees of the | ) | |
| Oregon Employment Department, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**SIMON, District Judge.**

Edgar Numrich is a *pro se* plaintiff who was granted unemployment benefits by the State

of Oregon at various periods of time and denied unemployment benefits at other periods of time.

Because some unemployment benefits had been paid to Numrich in error, the State of Oregon

attempted to collect from Numrich the amount of the overpayment. With that objective, the

Oregon Employment Department ("Department") issued a writ of judgment and distraint warrant

against Numrich for the overpaid funds. Numrich alleges that this action by the Department

adversely affected his credit report and that the Department refused his request for substantiation of an earlier decision by the Department denying him unemployment benefits. Numrich also alleges that, at one point, the Department considered changing an administrative rule in a manner that Numrich asserts would have biased administrative proceedings against claimants like himself. Based on these allegations, Numrich sued three employees of the Department under 42 U.S.C. § 1983, claiming that these individuals violated Numrich's constitutional right to procedural due process.

Defendants have moved to dismiss Numrich's complaint under Rule 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, arguing lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim, respectively. At part of his response to Defendants' motion, Numrich submitted three requests for judicial notice, which Defendants have opposed in full. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Numrich's First Request for Judicial Notice (Dkt. 23), GRANTS Numrich's Second Request for Judicial Notice (Dkt. 26), GRANTS Numrich's Third Request for Judicial Notice (Dkt. 29). The Court also GRANTS Defendants' Motion to Dismiss (Dkt. 13) for failure to state a claim. Unless Numrich files an amended complaint within 30 days of the date of this Opinion and Order that adequately addresses the pleading deficiencies identified in this decision, the Court will enter a judgment dismissing this case.

## BACKGROUND

Because Numrich is proceeding *pro se*, the Court construes his filings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Numrich raises three factually distinct claims against Defendants. Numrich;s first claim relates to an administrative decision issued by the Department

in November 2010 that denied Numrich unemployment benefits  (the "Nov. 2010 Decision").

Compl. at ¶ 42.  Numrich did not timely appeal the Nov. 2010 decision.  In fact, he never filed

any notice of appeal of that decision.  Instead, in late 2011, Numrich requested from the

Department an explanation of and substantiation for the factual basis underlying the Nov. 2010

Decision.  *Id.* at ¶ 44.  In his first claim for relief, Numrich alleges that neither Defendant Laurie

Warner (the Director of the Department) nor Defendant William Fink (the Deputy Director of the

Department) provided Numrich with any evidence that supported the Department's Nov. 2010

Decision in response to Numrich's request made in late 2011.  *Id.* at ¶¶ 11, 44.

Numrich's second claim begins in 2011 when he was again denied unemployment

benefits after an individual at the Department (who is not a defendant in this case) concluded that

Numrich had quit a new job without "good cause."  *Id.* at ¶ 21.  Numrich alleges that this

decision was incorrect, and this time he timely appealed that decision to an administrative law

judge ("ALJ"); he then appealed the ALJ's adverse decision to the Employment Appeals Board

(the "Board"), he appealed the Board's adverse decision to the Oregon Court of Appeals, and he

then sought review of the adverse appellate decision in the Oregon Supreme Court.  *Id.*; *see also*

Numrich Decl., Dkt. 27, Ex. C.[1]  He alleges that these decisions affirmed the 2011 benefits

decision against Numrich without "any attempt to examine or correct the whole record, examine

the facts, or contest the testimony of the prospective employer."  Compl. at ¶ 21.  Before this

Court, however, Numrich does not directly challenge any of these decisions; instead, he

challenges the adverse credit repercussions that flowed from the Department's effort to collect

on the overpayment that resulted, in part, from the 2011 adverse benefits decision.

---

[1] As discussed below, the Court takes judicial notice of the Oregon Supreme Court's denial of review of Numrich's claim.

Based on both the Nov. 2010 Decision and the 2011 decision, each denying Numrich unemployment benefits, and the resulting overpayment made by the Department to Numrich, Defendant Kevin McCarron, who is the Manager of the Department's Collections Unit, issued a writ of judgment and distraint warrant against Numrich. *Id.* at ¶¶ 11, 39. The distraint warrant sought collection of Numrich's "delinquent unemployment insurance overpayment." *Id.* at ¶ 39. The notice that accompanied the writ of judgment and distraint warrant explained that "[t]his filing creates a judgment of record and creates a lien upon any real property which you now own or may acquire" and stated that garnishment may occur if the judgment remains unpaid. *Id.* In his second claim for relief, Numrich alleges that the distraint warrant resulted in negative entries in his credit report, which caused him economic harm. *Id.* at ¶¶ 40-41.

In his third claim for relief, Numrich alleges that Defendant Warner participated in a meeting during which certain proposed revisions to Oregon Administrative Rules ("OAR") were discussed. Among the proposed revisions was a change to a "good cause" standard that Numrich alleges would have skewed administrative hearings in favor of the State. *Id.* at ¶ 48. Numrich alleges that this proposed change in the Oregon Administrative Rules, which was never adopted, would have violated Numrich's constitutional right to procedural due process, as well as the rights of all others similarly situated; Numrich also appears to allege that even the mere discussion and consideration of this rule change violated his right to procedural due process.

Based on these three sets of factual allegations, Numrich asserts that the three Defendants, acting in their personal capacities and under color of state law, violated Numrich's right to procedural due process as guaranteed by the Due Process Clause of the Fourteenth Amendment. *Id.* at ¶ 2. Numrich seeks declaratory relief, general and compensatory damages,

punitive damages, and attorney's fees.  Specifically, Numrich seeks $125,000 on his first claim

relating to the Nov. 2010 Decision denying him benefits and his later request for substantiation,

$250,000 on his second claim relating to the harm caused to his credit report by the filing of the

distraint warrant, and $1,000,000 on his third claim relating the proposed change in the Oregon

Administrative Rules.  *Id.* at ¶ 56.  Numrich also seeks prospective injunctive relief to prevent

Defendants and the State of Oregon from ever implementing the proposed rule change.  *Id.*

## DISCUSSION

**I.      Numrich's Three Requests for Judicial Notice**

Numrich submitted three requests for judicial notice of certain documents.  Under the

Federal Rules of Evidence ("FRE"), a court may take judicial notice only "of an adjudicative

fact" and then only if the fact "is not subject to reasonable dispute because it: (1) is generally

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  FRE 201(a), (b).

In his three requests for judicial notice, Numrich asks the Court to take notice of various

judicial opinions.  Defendants are correct that courts do not generally take judicial notice of

opinions issued in other cases, *see Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003),

and that the case law cited by Numrich is distinguishable.  Because Numrich is a *pro se* plaintiff,

however, the Court construes these requests liberally as an extension of Numrich's briefing.

Thus, the Court will take notice of the opinions cited by Numrich as part of the Court's review of

Numrich's legal arguments in opposition to Defendants' motion to dismiss.  The Court also will

take judicial notice of the Oregon statute (ORS § 657.267(3)) and the Oregon Administrative

Rule ("OAR") (OAR § 137-003-0501(7)) that Numrich asks the Court to consider.

The Court will also take notice, as Numrich requests, of the following facts: (1) the Oregon Supreme Court declined to review Numrich's administrative case regarding the 2011 denial of benefits; (2) Defendant Warner was present at a meeting where certain proposed changes to the Oregon Administrative Rules were discussed; and (3) the entries shown on the civil docket sheet of *Numrich v. Ntekpere*, 3:12-cv-1594-HU (D. Or.), although the reason why Numrich asks the Court to take notice of this docket sheet is not clear. *See* Numrich Decl., Dkt. 27, Exs. C & D; Plf.'s Third Req. for Judicial Notice, Dkt. 29, Ex. A.

The Court, however, will not take judicial notice of correspondence exchanged between Numrich and the U.S. Marshals Service or uncertified excerpts of an Oregon state administrative hearing. *See* Numrich Decl., Dkt. 24, Exs. A, B, H. These documents cannot be readily verified. *See* FRE 201(b). They are also the type of document more appropriate for judicial consideration at the summary judgment stage; the Court's review on a motion to dismiss generally is limited to the allegations raised in the complaint itself. Numrich's first request for judicial notice, Dkt. 23, is therefore granted in part and denied in part. His second and third requests for judicial notice, Dkts. 26 and 29, are granted.

## II.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants move for dismissal on three alternative grounds: lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted. The Court begins with the question of subject matter jurisdiction.

Defendants argue that the Eleventh Amendment deprives the Court of subject matter jurisdiction over at least part of Numrich's complaint. The Eleventh Amendment confirms that a state possesses sovereign immunity for many purposes, including "the privilege of the sovereign

not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011). Thus, a state may not be sued in federal court by a private citizen unless the state has waived its sovereign immunity or Congress has abrogated the state's sovereign immunity by appropriate federal legislation. *Id.* at 1638. In other words, a state may not be sued in federal court for alleged violations of state law, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984), and a state official may not be sued for money damages for conduct undertaken in his or her official capacity, *see id.* at 101.

Numrich has clarified that he does not raise in his complaint any claim based on an alleged violation of state law. Although Numrich states in his complaint that he sues Defendants "for negligence, negligent misrepresentation, negligent interference with economic expectation, negligent infliction of emotional distress[,] and defamation," Compl. ¶ 1, he has since explained that these "words" were used "for descriptive purposes only in their common ordinary meaning to describe the extent of the reckless and callous indifference to Plaintiff's federally protected civil rights." Pl.'s Resp. Br. Opp'n Defs.' Mot. Dismiss at 3. The use of these words, which typically denote state law causes of action, is confusing, but the Court accepts Numrich's representation that he does not plead any state law causes of action.

The complaint is also reasonably clear that Numrich is suing the three individual defendants primarily in their personal capacities. The only exception is Numrich's claim for prospective injunctive relief, which is correctly brought against Defendant Warner in her official capacity, as required by *Ex Parte Young¸* 209 U.S. 123 (1908).

In light of theis conclusions, the Court has subject matter jurisdiction to hear Numrich's claims and denies Defendants' Motion to Dismiss under Rule 12(b)(1).

OPINION AND ORDER, Page 7

**III.     Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process**

Defendants also originally moved to dismiss Numrich's complaint for failure to serve

them properly, pursuant to Oregon Rule of Civil Procedure 7D(2)(d) (service by mail).  At oral

argument, however, Defendants waived their defense of insufficient service of process.

Accordingly, the Court denies Defendant's Motion to Dismiss under Rule 12(b)(5).

**IV.     Rule 12(b)(6) Motion to Dismiss for Failure To State a Claim**

Finally, Defendants move to dismiss on the grounds that Numrich failed to state a claim

upon which relief could be granted.  The Court agrees and dismisses the complaint on this basis

under Rule 12(b)(6).

      *A.     Legal Standard*

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d

992, 998 (9th Cir. 2010); *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.,* 611 F.3d 495,

501 (9th Cir. 2010).  All reasonable inferences from the factual allegations must be drawn in

favor of the non-moving party.  *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir.

2011).

A complaint need not state "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Wilson,* 668 F.3d at 1140, quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009), citing *Twombly,* 550 U.S. at 556. The court, however, need not credit the plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-79.

Procedural due process requires notice and an opportunity to be heard, provided at a time and in a manner so as to be meaningful. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993)). Thus, to state a claim for relief under § 1983 for an alleged violation of procedural due process, a complaint must allege facts sufficient to make a plausible showing of all three of these elements.

### B.    Denial of Benefits in November 2010

Both the Nov. 2010 Decision denying Numrich unemployment benefits and the 2011 denial of his unemployment benefits are final decisions issued by a state agency and affirmed, in the case of the 2011 denial of benefits, by a state appellate court. This Court cannot decide issues that were previously litigated, or could have been litigated, during those state proceedings. 28 U.S.C. § 1738. Numrich, however, disclaims any attempt directly to challenge these

underlying state administrative and judicial decisions in this case. Instead, he alleges that Defendants Warner and Fink violated his right to procedural due process when, in response to Numrich's inquiries in late 2011, they refused to provide the substantiation that he requested for the basis of the Nov. 2010 Decision and further refused to accept Numrich's sworn statement regarding those charges. Compl. ¶ 44.

Numrich's allegations, however, do not state a claim for denial of procedural due process. Numrich does not allege that he was denied the right to challenge the 2010 denial of benefits at the time it was issued. It appears from his complaint that he did not request a hearing to contest the 2010 denial of benefits, and that decision is now final. Even if Numrich were not sanguine about the prospects of a hearing, requesting one was his opportunity to present additional evidence or demand substantiation; he may not decline to use available legal process and then later argue that he has been denied his right to procedural due process. Now that the decision is final and the matter is *res judicata*, Numrich does not have a constitutionally protected due process right to demand substantiation or to reopen his case for the purpose of providing additional evidence. The Court therefore dismisses Numrich's first claim for relief based on these allegations.

### C.    *Distraint Warrant Issued Following Denial of Benefits in 2011*

Numrich's second claim turns on the issuance of a writ of judgment and distraint warrant by Defendant McCarron following the 2011 denial of Numrich's unemployment benefits. The distraint warrant is attached to a declaration submitted by Numrich, *see* Dkt. 18-1, and summarized in the complaint. It provides notice that the judgment against Numrich is a matter of public record and that failure to pay the judgment may result in the garnishment of wages. In

issuing the distraint warrant, Defendant McCarron and the State of Oregon did not seize any of

Numrich's property or move to garnish Numrich's wages or bank accounts.  The complaint also

does not allege that McCarron or any other Defendant themselves caused Numrich's credit report

to reflect the existence of the adverse judgment.  The complaint only alleges that McCarron

signed the distraint warrant and that "[w]ritten fact and detail of issuance [of the distraint

warrant] will remain on Plaintiff's credit bureau and score reports until 2019."  Compl. ¶ 40; *see

also id.* ¶¶ 39, 41.

These allegations do not state a plausible violation of Numrich's right to procedural due

process.  The fact that Numrich must refund certain benefits to the State of Oregon has already

been decided adversely to Numrich, and Numrich does not allege that he was denied notice or an

opportunity to be heard in those underlying proceedings.  The narrow question raised by

Numrich's claim is what additional procedures, if any, are constitutionally required before the

State can execute on its judgment, the validity of which is not properly challenged before this

Court.  *Cf. Brown v. Lobdell*, 36 Or. App. 397, 585 P.2d 4, 10 (1978).

Defendants argue that Numrich's claim is foreclosed by *Endicott-Johnson Corp. v.

Encyclopedia Press*, 266 U.S. 285 (1924), which held that no further notice is required before a

judgment may be executed against a judgment debtor's property.  *Id.* at 288.  Defendants are

incorrect.  The Ninth Circuit has noted, along with many other circuits, that the Supreme Court's

intervening due process jurisprudence has cast doubt on the "absoluteness" of the holding in

*Endicott-Johnson*.  *See, e.g.*, *Duranceau v. Wallace*, 743 F.2d 709, 711 & n.1 (9th Cir. 1984)

(collecting Supreme Court cases); *Augustine v. McDonald*, 770 F.2d 1442, 1445 n.3 (9th Cir.

1985); *accord, e.g.*, *Adkins v. Rumsfeld*, 464 F.3d 456, 471 (4th Cir. 2006); *Morrell v. Mock*, 270

F.3d 1090, 1096-97 (7th Cir. 2001); *McCahey v. L.P. Investors*, 774 F.2d 543, 547 (2d Cir.

1985).

      Instead, when evaluating post-judgment due process claims, the circuit courts now apply

the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976). *See, e.g., Duranceau*,

743 F.2d at 711; *Aacen v. San Juan Cnty. Sheriff's Dep't*, 944 F.2d 691, 695 (10th Cir. 1991)

("The circuit courts reviewing the constitutional sufficiency of notification and hearing

procedures in post-judgment garnishment proceedings have universally employed the balancing

test summarized in *Mathews v. Eldridge*[.]"); *McCahey*, 774 F.2d at 548 (applying *Mathews*

balancing test on a motion to dismiss). Under the *Mathews* balancing test, the court weighs "the

competing interests at stake, the risk of erroneous deprivation under existing procedures, and the

value of substitute procedures." *Duranceau*, 743 F.2d at 711.

      Numrich's complaint, however, does not allege what additional post-judgment process

should have been provided, much less how such process would have reduced the risk of

erroneous deprivation.[2] Numrich does not even allege that the writ of judgment and distraint

warrant were entered in error. The only harm he alleges is the repercussion of a judgment

seemingly entered correctly in a case whose outcome Numrich cannot now lawfully dispute.

      The State also has not yet moved to garnish Numrich's wages or seize any of his

property, distinguishing Numrich's claim from cases in which the circuit courts have held that

additional post-judgment process may be warranted. The distraint warrant was itself notice that

garnishment or seizure might occur if Numrich did not comply with the judgment. In effect,

---

[2] As Defendants note, Numrich could have moved to stay enforcement of the agency
order pending appeal to the state courts. *See* ORS § 183.482(3). The complaint does not allege
that Numrich pursued this option nor why such a stay would have been insufficient to protect the
property interest of which he now claims to be deprived (*i.e.*, his credit score).

Numrich is alleging that he has a constitutionally protected right to receive *private* notice that the State intends to execute on a judgment in its favor, but the Court is not aware of any precedent that would support such a claim, and Numrich has failed to cite any such precedent.

Moreover, even if Numrich could make out a claim of procedural due process based on this set of facts, the claim would still have to be dismissed on the grounds of qualified immunity. Numrich appears to argue that the doctrine of qualified immunity does not always apply to state officials. Numrich is incorrect. In federal courts, state as well as federal officials are immune from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To evaluate Defendants' qualified immunity defense on a motion to dismiss, the Court considers two questions: "whether the facts alleged in the complaint, viewed in the light most favorable to Plaintiff[], demonstrate that the [Defendants'] conduct violated" Plaintiff's Fourteenth Amendment procedural due process rights, and whether "the right at issue was clearly established at the time of the violation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009). It does not matter which question the Court takes up first. *Pearson,* 555 U.S. at 236.

To reiterate, the Court holds that the facts alleged in the complaint regarding the distraint warrant do not demonstrate a violation of Plaintiff's due process rights. The Court further concludes that the right alleged by Numrich—the right not to have a writ of judgment and distraint warrant entered into the public record in such a way as to affect the judgment debtor's credit score without further notice or an opportunity to be heard—was not clearly established at the time the writ of judgment and distraint warrant was issued. Thus, a reasonable state official

would not have known that entering a routine writ of judgment and distraint warrant without further process would violate an individual's constitutional rights if it were subsequently and adversely reflected in the individual's credit report.  The requirement for post-judgment due process varies depending on circumstance, *see Duranceau*, 743 F.2d at 712-13, and the Court is aware of no case in which additional post-judgment process was required where the judgment debtor's property was not seized, garnished, or otherwise attached.  *Cf. Augustine*, 770 F.2d at 1145-46, n.3 (because of the uncertain authority of *Endicott-Johnson*, "it cannot successfully be argued that at the time of the execution of the writs [of garnishment] it was clearly established that the [state] statute violated a debtor's due process guarantees").

Because the complaint does not adequately allege a constitutional violation and because, even if properly pled, the violation alleged did not relate to a clearly established constitutional right, the Court dismisses Numrich's second claim for relief based on these allegations.

> D.    *Administrative Rulemaking and the "Good Cause" Standard*

At oral argument, Numrich clarified the contours of his third and final claim.  Based on the minutes of the Office of Administrative Affairs Oversight Committee ("Committee"), Numrich alleges that Defendant Warner was present during a Committee discussion of potential changes to certain administrative rules.  The minutes from the October 6, 2010 meeting include the following two sentences:  "The default standard will be Good Cause.  This will eliminate the beyond party seeking relief control [*sic*]."  Based on these two sentences, Numrich argues that Warner, as the head of the Department, intended to bias the Department's administrative law judges against claimants like himself.  There are many reasons why Numrich's argument fails.

First, as Numrich himself acknowledged at oral argument, the proposed rule change was never implemented.  Thus, there is no allegedly problematic rule for this Court to enjoin anyone from enforcing.  The claim for prospective injunctive relief is therefore denied.

Second, the "good cause" rule that was discussed at the October 2010 Committee meeting was not even relevant to Numrich's case.  The "good cause" standard at OAR 137-003-0501(7) relates to the timely filing of papers in contested cases.[3]  The "good cause" at issue in Numrich's 2011 denial of unemployment benefits concerned his grounds for quitting a job.  *See* OAR 471-030-0038(4).[4]  The administrative rule discussion that is the basis of Numrich's third claim thus appears to have nothing to do with the harm that Numrich alleges he suffered.

Third, there is no allegation—and Numrich concedes he can make none—that Defendant Warner even participated in this discussion.  Because the doctrines of *respondeat superior* and vicarious liability are inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added).  An allegation that a defendant was present at a meeting where there was discussion of a potential rule change that might have affected the plaintiff's rights does not meet this standard.

---

[3] "For purposes of OAR 137-003-0501 to 137-003-0700, 'good cause' exists when an action, delay, or failure to act arises from an excusable mistake, surprise, excusable neglect, reasonable reliance on the statement of a party or agency relating to procedural requirements, or from fraud, misrepresentation, or other misconduct of a party or agency participating in the proceeding."  OAR 137-003-0501(7).

[4] "Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. . . .  Except as provided in OAR 471-030-0038(5)(g), for all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."  OAR 471-030-0038(4).

OPINION AND ORDER, Page 15

Liberally construing Numrich's complaint, it appears that he is concerned that the administrative law judges are or may be biased in favor of the Department because they are part of the State's executive branch.  It is neither unusual nor a violation of due process for government agencies to make investigations, issue determinations, *and* conduct enforcement proceedings.  *See Withrow v. Larkin*, 421 U.S. 35, 47-57 (1975).  Furthermore, there is a presumption that agencies and courts are impartial.  *See, e.g.*, *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).   Numrich's complaint offers at best a strained speculation of bias that does not cast doubt on the impartiality of the agency and state court proceedings.  Further, Numrich's general sense that he did not get fair treatment during the administrative process does not, by itself, state a claim for a constitutional violation of his right to procedural due process.  For all of these reasons, the Court dismisses Numrich's third claim for relief based on these allegations.

## CONCLUSION

The Court therefore GRANTS IN PART and DENIES IN PART Numrich's First Request for Judicial Notice (Dkt. 23), GRANTS Numrich's Second Request for Judicial Notice (Dkt. 26), and GRANTS Numrich's Third Request for Judicial Notice (Dkt. 29).  The Court also GRANTS Defendants' Motion to Dismiss (Dkt. 13) on the basis that the complaint fails to state a claim.  Numrich may file an amended complaint within 30 days of the date of this Opinion and Order that adequately addresses the pleading deficiencies identified in this decision.  If Numrich does not timely do so, the Court will enter a judgment dismissing this case.

DATED this 31st day of December, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

OPINION AND ORDER, Page 16